Civil Action No. 11 cv 5770 (NRB)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE CITY OF NEW YORK and THE BOARD OF
EDUCATION OF THE CITY SCHOOL DISTRICT
OF THE CITY OF NEW YORK,

                                                    Plaintiffs,


                        -against-


BETTY RADEF, as executor of the estate of Trifon
Radef, deceased, NICANOR FERNANDEZ, MORRIS
HAMPTON,     FRANK     CHAMBERS,     JAMES
COPPOLA, MICHAEL CUNNINGHAM, SR.,

                                                    Defendants.


**MEMORANDUM OF LAW OF PLAINTIFF THE
CITY OF NEW YORK IN OPPOSITION TO THE
MOTION TO DISMISS BY BETTY RADEF, AS
EXECUTOR OF THE ESTATE OF TRIFON
RADEF, DECEASED**


*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*


*Of Counsel:  Eric Proshansky*
*June R. Buch*
*Tel:  (212) 788-1324*


*August 20, 2012*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

THE ALLEGATIONS OF THE AMENDED COMPLAINT ......................................... 2

ARGUMENT

      POINT I

            *BOYLE v. UNITED STATES* FORECLOSES THE ESTATE'S PRINCIPAL ARGUMENT FOR DISMISSAL ................................................................................. 4

               A.   An Enterprise Need Have No Structure Apart From The Pattern of Racketeering Activity In Which It Engages .................................................. 5

               B.   The Amended Complaint Does Not Allege a "Hub-and-Spokes" Enterprise ....................................................... 10

               C.   The Radef Enterprise Possesses The Three Structural Criteria Required by *Boyle*. .................................. 15

CONCLUSION ............................................................................................................... 19

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                          <u>**Pages**</u>

*Ashcroft v. Iqbal,*
    129 S. Ct 1937 (2009) ................................................................................................. 4

*Boyle v. United States,*
    556 U.S. 938 (2009) ............................................................... 2, 5, 6, 7, 8, 9, 10, 14, 15, 16, 17

*California Motor Transp. Co. v. Trucking Unlimited,*
    404 U.S. 508 (1972) ................................................................................................. 4

*Cedar Swamp Holdings, Inc. v. Zaman,*
    487 F. Supp. 2d 444 (S.D.N.Y. 2007) ...................................................................... 10, 11, 14

*City of New York v. Smokes-Spirits.com, Inc.,*
    541 F.3d 425 (2d Cir. 2008) ..................................................................................... 17-18

*Crest Constr. II, Inc. v. Doe,*
    660 F.3d 346 (8th Cir. 2011) .................................................................................... 8

*Cruz v. FXDirectDealer, LLC,*
    2012 U.S. Dist. LEXIS 26417 (S.D.N.Y. Feb. 29, 2012) .......................................... 9, 10, 16

*Dickson v. Microsoft Corp.,*
    309 F.3d 193 (4th Cir. 2002) ................................................................................... 12

*Eaves v. Designs for Fin., Inc.,*
    785 F. Supp. 2d 229 (S.D.N.Y. 2011) ..................................................................... 9, 10

*Elsevier Inc. v. W.H.P.R., Inc.,*
    692 F. Supp. 2d 297 (S.D.N.Y. 2010) ..................................................................... 8, 14

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,*
    385 F.3d 159 (2d Cir. 2004) .................................................................................... 5, 9, 10

*First Nationwide Bank v. Gelt Funding Corp.,*
    820 F. Supp 89 (S.D.N.Y. 1993) ............................................................................. 10, 11

*Frasier v. Gen. Electric Co.,*
    930 F.2d 1004 (2d Cir. 1991) .................................................................................. 4

*Hemi Group, LLC v. City of New York,*
    130 S. Ct. 983 (2010) .............................................................................................. 18

**Cases**                                                                                      **Pages**

*In re Ins. Brokerage Antitrust Litig.,*
    2007 U.S. Dist. LEXIS 73220 (D.N.J. Sept. 28, 2007),
    *aff'd in part, vacated in part*, 618 F.3d 300 (3d Cir. 2010) ........................................ 11, 12, 15

*Kottler v. Deutsche Bank AG,*
    607 F. Supp. 2d 447 (S.D.N.Y. 2009) ................................................................. 9, 10

*McCullough v. Suter,*
    757 F.2d 142 (7th Cir.1985) ...................................................................................... 18

*Moss v. Morgan Stanley,Inc.,*
    719 F.2d 5 (2d Cir. 1983) ................................................................... 6, 8, 9, 10

*Neiman Marcus Group, Inc. v. Dispatch Transp. Corp.,*
    2011 U.S. Dist. LEXIS 30681 (S.D.N.Y. Mar. 17, 2011) ...................................... 16

*New York Auto. Ins. Plan v. All Purpose Agency & Brokerage,*
    1998 U.S. Dist. LEXIS 15645 (S.D.N.Y. Oct. 2, 1998) ........................................ 11

*Schmidt v. Fleet Bank,*
    16 F. Supp. 2d 340 (S.D.N.Y. 1998) ....................................................................... 5

*Structural Maint. & Contr. Co. v. Jayce Enters.,*
    2010 U.S. Dist. LEXIS 108928 (S.D.N.Y. Oct. 9, 2010) ....................................... 4

*United States v. Anderson,*
    626 F.2d 1358 (8th Cir. 1980) .................................................................................. 8

*United States v. Bagaric,*
    706 F.2d 42 (2d Cir. 1983) .................................................................................. 8, 9

*United States v. Benny,*
    786 F.2d 1410 (9th Cir. 1986) ................................................................................ 18

*United States v. Brown,*
    2001 U.S. Dist. LEXIS 2777 (E.D. La. 2001)
    *aff'd on other gnds*., 298 F.3d 392 (5th Cir. 2002) ................................................ 18

*United States v. Cunningham*,
    12 cr 74 (AJN), Dkt. ___. ......................................................................................... 4

*United States v. Errico,*
    635 F.2d 152 (2d Cir. 1980),
    *cert. denied*, 453 U.S. 911 (1981) .......................................................................... 9

| **Cases** | **Pages** |
|---|---|

*United States v. Hutchinson,*
    573 F.3d 1011 (10th Cir. 2009) ....................................................................... 6, 8

*United States v. Larson,*
    2011 U.S. Dist. LEXIS 139357 (W.D.N.Y. Dec. 5, 2011) ..................................... 16

*United States v. Mazzei,*
    700 F.2d 85 (2d Cir. 1983),
    *cert. denied*, 461 U.S. 945 (1983) ................................................................ 5, 8, 9, 10

*United States v. Turkette,*
    452 U.S. 576 (1981) ..................................................................................... 5, 7, 8

*United States v. Wilson,*
    605 F.3d 985 (D.C. Cir. 2010) ................................................................................. 8

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.,*
    425 F. Supp. 2d 484 (S.D.N.Y. 2006) ................................................................. 10

**Rules**

Fed. R. Civ. P. 8(a)(2) ............................................................................................. 4

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

THE CITY OF NEW YORK and THE BOARD OF
EDUCATION OF THE CITY SCHOOL DISTRICT OF
THE CITY OF NEW YORK,

                                                        Civil Action No. 11 cv 5770 (NRB)
                                        Plaintiffs,

                        -against-

BETTY RADEF, as executor of the estate of Trifon Radef,
deceased,    NICANOR    FERNANDEZ,    MORRIS
HAMPTON, FRANK CHAMBERS, JAMES COPPOLA,
MICHAEL CUNNINGHAM, SR.,

                                        Defendants.

----------------------------------------------------------------------x

## MEMORANDUM OF LAW OF PLAINTIFF THE CITY
## OF NEW YORK IN OPPOSITION TO THE MOTION TO
## DISMISS BY BETTY RADEF, AS EXECUTOR OF
## THE ESTATE OF TRIFON RADEF, DECEASED

          Plaintiff The City of New York (the "City"), by its attorney, Michael A. Cardozo,

Corporation Counsel of the City of New York, respectfully submits this memorandum of law in

opposition to the motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6) by

defendant Betty Radef, as executor of the estate of Trifon Radef, deceased (the "Estate").[1]

## PRELIMINARY STATEMENT

          The Estate's motion to dismiss barely cites to, much less analyzes, the dispositive

Supreme Court and Second Circuit authority that addresses the very issue on which the Estate's

motion turns. The Estate's secondary argument, of an enterprise with a forbidden "hub-and-

---

[1] This memorandum is submitted in opposition to the Estate's motion, filed July 20, 2012, to
dismiss the amended complaint (Dkt. 47), supported by the *Memorandum of Betty Radef, As
Executor of The Estate of Trifon Radef, Deceased, In Support of Her Motion To Dismiss The
Amended Complaint*, dated July 20, 2012 (Dkt. 48) ("*Radef Mem.*").

spokes structure," depends on a complete re-imagining of the amended complaint, which the Estate re-casts through allegations bearing no resemblance to the facts actually pleaded; the motion should accordingly be denied.

The Estate relegates to a footnote *Boyle v. United States*, 556 U.S. 938 (2009), which resolved the very argument on which the Estate relies by holding that a well-pleaded RICO claim does not require allegations of a racketeering enterprise separate and distinct from a pattern of racketeering. Indeed, any such requirement had been repeatedly rejected by the Second Circuit long before *Boyle*.  The Estate relies entirely on district court decisions that both pre-date *Boyle* and fail to consider that earlier Second Circuit authority.

The Estate's secondary argument, relating to "hub-and-spoke" RICO enterprises, fails because the actual amended complaint – by contrast to the one invented by the Estate – does not describe an enterprise whose structure resembles in the least the hub-and-spokes enterprises rejected in the decisions cited by the Estate. The allegations of the amended complaint instead describe inter-dependent associations, among enterprise members who have both long-standing relationships and a common purpose, which is all that is required of a correctly-structured RICO enterprise.

## THE ALLEGATIONS OF THE AMENDED COMPLAINT

The amended complaint alleges that Trifon Radef, Nicanor Fernandez, Morris Hampton, Frank Chambers, James Coppola, and Michael Cunningham, Sr., defrauded New York City and the New York City Department of Education ("DOE") (when referred to collectively, the "City") by pretending to perform custodial work in DOE schools, arranging for the submission of false paperwork to secure payment for that work, accepting the resultant payroll checks, and sharing among themselves the cash derived from the negotiated checks.  *See, e.g.*, *Am. Compl.* ¶ 3, 32.

As School Custodians, each of whom had full authority over the physical plant of their assigned school buildings, defendants Trifon Radef and Nicanor Fernandez were in a position to hire, allocate work to, and arrange for the payment of workers who were deemed to be Radef's and Fernandez's employees, paid through the Custodian's DOE-funded School Custodian accounts. *Am. Compl.* ¶ 20; 21, 22.  Radef, as School Custodian of Roosevelt High School, and Fernandez, as School Custodian of Truman High School, placed workers on the payrolls of each of these schools. The workers did no work, and indeed apparently never even appeared at the schools, evidenced by the fact that long-time Roosevelt and Truman employees could not identify them. *Am. Compl.* ¶ 48, 51.  Radef and Fernandez signed and filed time records that falsely attested that the workers had performed work at the schools. Payroll checks, also signed by Fernandez or Radef, were issued on the basis of the false time records and endorsed by the workers for deposit into local banks. The resultant cash proceeds were shared among Radef, Fernandez and the sham workers. *See, e.g.*, *Am. Compl.* ¶¶ 26, 32, 33, 35.

The amended complaint describes two principal schemes, each with the same above-described *modus operandi*.  In the "No-Show Scheme," custodial workers signed time-sheets and endorsed payroll checks as if they had performed work at Roosevelt or Truman High School, but did no actual work at either school.  The workers kicked back a portion of the proceeds to Radef and Fernandez.  In the "Diverted Work Scheme," custodial workers signed time-sheets and endorsed payroll checks as if they worked at Roosevelt High School, but any actual work performed was on properties owned by Radef.  *See e.g., Am. Compl.* ¶¶ 53-60.

Radef, Fernandez, Hampton, Chambers, Coppola, and Cunningham operated as an association-in-fact enterprise referred to as the "Radef Enterprise." *Am. Compl.* ¶ 62.  Some enterprise associates were acquainted with one another based on past employment, *Am. Compl.*

¶¶ 22, 33, 37, 49, 56, some associates assisted one another is carrying out particular aspects of either the No-Show Scheme or the Diverted Work Scheme, and some associates participated in both schemes. *Am. Compl.* ¶¶ 46, 56.

<u>ARGUMENT</u>

**POINT I**

***BOYLE V. UNITED STATES* FORECLOSES THE ESTATE'S PRINCIPAL ARGUMENT FOR DISMISSAL**

On this motion brought pursuant to  Federal Rule 12 (b) (6), "the court is required to accept the material facts alleged in the complaint as true," *Frasier v. Gen. Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991) (citation omitted), and "to read a complaint generously, drawing all reasonable inferences from its allegations in favor of the plaintiff." *Structural Maint. & Contr. Co. v. Jayce Enters.*, 2010 U.S. Dist. LEXIS 108928, 5-7 (S.D.N.Y. Oct. 9, 2010) (citing *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515 (1972).  Federal Rule 8 (a) (2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," and a complaint accordingly need not provide detailed factual allegations; it need allege merely enough to state a claim that is plausible on its face, *i.e.* having sufficient factual content to allow a court reasonably to infer that the defendant is liable for the misconduct alleged and thereby put the defendant on notice of the nature of the plaintiff's claim.  *Ashcroft v. Iqbal*, 129 S. Ct 1937, 1949 (2009).[2]

---

[2]  The plausibility of the amended complaint is supported, if not actually assured, by the fact that several of the defendants herein have pleaded guilty to criminal offenses arising out of the same facts alleged in the amended complaint. *See United States v. Cunningham*, 12 cr 74 (AJN), docket entries dated June 22, 2012; August 8, 2012.

A.      **An Enterprise Need Have No Structure Apart From The Pattern of Racketeering Activity In Which It Engages**

         The Estate's principal grievance with the amended complaint is a purported insufficiency of facts establishing "the existence of a racketeering enterprise that is separate and distinct from the alleged predicate acts of racketeering." *Radef Mem.* at 1. The Estate complains that the pleadings do not "suggest[] that an enterprise existed as an association-in-fact separate and apart from the alleged predicate acts," *id* at 5, but instead that the Radef Enterprise is merely "coextensive with the alleged predicate acts constituting the alleged pattern of racketeering activity." *Id.* The Estate believes that a RICO claim requires allegations of an enterprise whose existence is "separate and apart from the pattern of activity in which it engages," *id*. at 7 (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981), or that consists of "a course of fraudulent or illegal conduct *separate and distinct from the alleged predicate acts.*" *Id*. at 7 (citing *First Capital Asset Mgmt., Inc. v. Satinwood, Inc*., 385 F.3d 159, 174 (2d Cir. 2004) (Estate's emphasis).  Whether or not this once was the law – as shown below, it never was in the Second Circuit -- it is not now, anywhere.[3]

         In *Boyle v. United States*, 556 U.S. 938, 941 (2009), the Supreme Court was "asked … to decide whether an association-in-fact enterprise under [RICO] must have an ascertainable structure beyond that inherent in the pattern of racketeering activity in which it

_____

[3] The intended meaning of the requirement that an enterprise "be distinct from the alleged pattern of racketeering activity" is not always clear, but most often is described as requiring that the enterprise have some other purpose or engage in other activities than merely the commission of the crimes at issue, *i.e.*, an association that would continue to operate if the enterprise committed no crimes.  *See, e.g. United States v. Mazzei*, 700 F.2d 85, 88 (2d Cir. 1983) ("According to Mazzei, the government's indictment alleged an enterprise identical to the alleged pattern of racketeering activity, to wit, a conspiracy formed for the sole purpose of shaving points in B.C. basketball games."); *Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 349 (S.D.N.Y. 1998) ("The enterprise cannot simply be … the minimal association which surrounds the pattern racketeering acts. In other words, the members of the group as a whole must have a common link other than the racketeering activity.") (quotation marks and brackets omitted).

engages." (citation omitted).  *Boyle*'s precise focus on the very issue raised here by the Estate suggests that the decision merits an analysis deeper than the Estate's carefully-clipped quotations, buried in a footnote. *See Radef Mem.* at 7, n.1.  The need for more than a footnoted analysis is reinforced by the comments of a leading RICO treatise, which in three instances prefaces its discussion of "Associated–in–Fact Enterprises" with the phrase "Prior to the Supreme Court's decision in *Boyle v. United States*…," *see Rakoff, J. & Goldstein, H.*, *RICO: Civil and Criminal Law and Strategy,* at § 1.05[1]: 1-61, 1-64; § 1.05[2]: 1-73 (Law Journal Press, 2012 ed.) (hereafter "*RICO Treatise*"), as in "Prior to *Boyle v. United States* many courts had interpreted this aspect of the enterprise element [*i.e.*, the enterprise/pattern distinction] to require that the enterprise have an organization or structure beyond that which is necessary to commit the racketeering acts." *RICO Tr.* at 1-52. *See also United States v. Hutchinson*, 573 F.3d 1011, 1021 (10th Cir. 2009) ("Whatever we once might have said about the [enterprise-pattern distinction], the world now looks very different after the Supreme Court's recent decision in Boyle.").[4]

> According to the RICO Treatise,
>
> The Supreme Court granted certiorari in *United States v. Boyle* to address the circuit split that had arisen over whether an association-in-fact enterprise must have an ascertainable structure that is distinct from that inherent in the pattern of racketeering activity in which the enterprise engages….The majority did not find any basis in the statutory text of RICO for imposing a requirement that an associated in fact enterprise have an ascertainable structure distinct from the pattern of racketeering.

---

[4] As detailed below, the Second Circuit was not among those "many courts."  Even pre-*Boyle*, "the Second Circuit d[id] not require that "the evidence offered to prove the 'enterprise' and the 'pattern of racketeering' … be distinct." *RICO Tr.* at 1-65 (citing *Moss v. Morgan Stanley*, 719 F.2d 5, 22 (2d Cir. 1983) (reversing district court for requiring plaintiff to plead existence of an enterprise and allege facts showing that the enterprise had an "independent economic significance from the pattern of racketeering activity.")). *See infra* at 8.

***

> The Supreme Court's decision in *Boyle v. United States* resolved the circuit split over whether proof of some form of structure beyond that inherent in the pattern of racketeering activity is necessary to establish that a group is an associated-in-fact enterprise. The Court concluded that there is no basis in RICO for imposing a requirement that a group have some ascertainable structure beyond that which is necessary to engage in a pattern of racketeering activity.

*RICO Tr.* at 1-66-67, 1-75.

> *Boyle* structured its analysis as follows:

> As noted, the specific question on which we granted *certiorari* is whether an association-in-fact enterprise must have "an ascertainable structure beyond that inherent in the pattern of racketeering activity in which it engages." We will break this question into three parts. First, must an association-in-fact enterprise have a "structure"? Second, must the structure be "ascertainable"? Third, must the "structure" go "beyond that inherent in the pattern of racketeering activity" in which its members engage.

*Boyle*, 556 U.S. at 945. After holding that an enterprise indeed must have a structure (the characteristics of which are discussed below), and that the structure must be "ascertainable," *Boyle* then addressed the core question of whether the enterprise must have a structure "[b]eyond that inherent in the pattern of racketeering activity," concluding:

> This phrase [beyond that inherent in the pattern of racketeering activity] may be interpreted in at least two different ways, and its correctness depends on the particular sense in which the phrase is used. If the phrase is interpreted to mean that the existence of an enterprise is a separate element that must be proved, it is of course correct. As we explained in *Turkette*, the existence of an enterprise is an element distinct from the pattern of racketeering activity and "proof of one does not necessarily establish the other." 452 U.S. at 583. *On the other hand, if the phrase is used to mean that the existence of an enterprise may never be inferred from the evidence showing that persons associated with the enterprise engaged in a pattern of racketeering activity, it is incorrect.* We recognized in *Turkette* that the evidence used to prove the pattern of racketeering

> activity and the evidence establishing an enterprise "may in particular cases coalesce." *Ibid.*

*Boyle*, 556 U.S. at 947 (emphasis added); *accord United States v. Wilson*, 605 F.3d 985, 1020 (D.C. Cir. 2010) (holding "without merit" contention "that an association-in-fact enterprise must have some structure beyond the attendant pattern of racketeering activity.")(citing *Boyle*). *Boyle* then held there was <u>no</u> requirement for "an association in fact enterprise … to have an ascertainable structure beyond that inherent in the pattern of racketeering activity in which it engages." *Elsevier Inc. v. W.H.P.R., Inc*., 692 F. Supp. 2d 297, 306 (S.D.N.Y. 2010).

The Second Circuit had never required an enterprise-pattern distinction, even prior to *Boyle*.  *See United States v. Mazzei*, 700 F.2d 85 (2d Cir. 1983), *cert. denied*, 461 U.S. 945 (1983), *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 22-23 (2d Cir. 1983); *United States v. Bagaric*, 706 F.2d 42 (2d Cir. 1983).  See *Hutchinson*, 573 F.3d at 1021 (10th Cir. 2009) ("Addressing the circuit split that arose in *Turkette's* wake, the Supreme Court in *Boyle* sided with the Second Circuit…").

In *Mazzei,* 700 F.2d at 89, the Second Circuit expressly rejected the view that the evidence to prove the "enterprise" and the "pattern of racketeering" must necessarily be distinct, as for example the Eighth Circuit had required in *United States v. Anderson*, 626 F.2d 1358, 1372 (8th Cir. 1980) (an enterprise must have an ascertainable structure which exists for the purpose of maintaining operations directed to an economic goal and that has an existence "that can be defined apart from the commission of the predicate acts constituting the 'pattern of racketeering activity").[5] The enterprise in *Mazzei* was nothing more than a group of bettors and college basketball players who earned gambling proceeds by conspiring to fix games. *Accord,*

---

[5] The Second Circuit's express rejection of Eighth Circuit authority on this issue has not dissuaded the Estate from relying on a recent Eighth Circuit case in its present motion. *See Radef Mem*. at 8 (citing *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 354-355 (8th Cir. 2011).

*United States v. Bagaric*, 706 F.2d at 55 ("We have upheld application of RICO to situations where the enterprise was, in effect, no more than the sum of the predicate racketeering acts."); *United States v. Errico*, 635 F.2d 152, 156 (2d Cir. 1980), *cert. denied*, 453 U.S. 911 (1981) (holding that a network of jockeys and bettors, joined together for the "single, illegal purpose" of betting on "fixed" horse races, constituted an "enterprise" for purposes of RICO.).   The enterprise in *Moss v. Morgan Stanley* consisted only of an insider passing confidential information through an intermediary to a broker, so that the pattern of racketeering activity "consisted of …purchase and sale of …stock on the basis of the confidential information about the imminent tender offer."  In *Moss*, the Second Circuit applied *Mazzei* and reversed the district court for requiring that the enterprise consist of something more than the pattern of racketeering acts. *Moss*, 719 F.2d at 22-23.[6]

Against the weight of the above authorities, the Estate supports its argument for dismissal by citing almost entirely to district court decisions that either pre-date or fail to cite *Boyle*.  *See Radef Mem.* at 8-10 (citing *Eaves v. Designs for Fin.*, *Inc.*, 785 F. Supp. 2d 229 (S.D.N.Y. 2011) (no citation to *Boyle*, relies on pre-*Boyle* district court decisions); *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447 (S.D.N.Y. 2009) (decided pre-*Boyle*); *Cruz v. FXDirectDealer, LLC*, 2012 U.S. Dist. LEXIS 26417 (S.D.N.Y. Feb. 29, 2012) (relies on

---

[6]  The Estate's citation to *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 175 (2d Cir. 2004) for the notion that enterprise allegations require "a course of fraudulent or illegal conduct separate and distinct from the alleged predicate acts," *Radef Mem.* 7, relies at best on *dicta*.  *First Capital Asset Mgmt.* expressly stated that "because we conclude that Plaintiffs have failed to plead adequately that Defendants conducted or participated in the conduct of the affairs of the enterprise through a pattern of racketeering activity …. we assume without deciding that Plaintiffs have adequately pled the existence of [an] [e]nterprise." *Id.* at 175.

*Kottler*).[7] Notably, <u>none</u> of the decisions offered by the Estate to support a required enterprise/pattern distinction cite the Second Circuit decisions in *Moss* or *Mazzei*.

In short, the authority offered by the Estate with respect to a requirement of enterprise/pattern distinctness is no longer – and probably never was -- good authority. *See generally World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 425 F. Supp. 2d 484, 497 (S.D.N.Y. 2006) (concluding that *Mazzei* then remained the governing authority in the Second Circuit and that district courts erred in concluding that *First Capital Asset Mgmt. v. Satinwood* had overruled *Mazzei*). The Estate's argument on this point does not support dismissal of the amended complaint.

**B.    The Amended Complaint Does Not Allege a "Hub-and-Spokes" Enterprise**

The Estate alternatively asserts that dismissal is appropriate because the amended complaint describes a "hub-and-spokes" structure, *i.e.*, "allegations that a common defendant perpetrated various independent frauds, each with the aid of a different co-defendant," or "that a defendant committed a series of similar but separate frauds with several different accomplices." *Radef Mem.* at 11 (citing *Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 450 (S.D.N.Y. 2007); *First Nationwide Bank v. Gelt Funding Corp.,* 820 F. Supp 89, 97-98 (S.D.N.Y. 1993). According to the Estate, "the allegations suggest only that Defendants operated according to a hub-and-spokes structure *of which Radef was the hub* and the other members of the alleged enterprise were the spokes." *Radef Mem.* at 12 (quoting *Cedar Swamp*, 487 F. Supp 2d at 451) (brackets and internal quotation marks omitted) (emphasis added).

---

[7] Judge Crotty's decision in *Cruz v. FXDirectDealer, LLC*, 2012 U.S. Dist. LEXIS 26417 (S.D.N.Y. Feb. 29, 2012) does take note of *Boyle,* but relies on the pre-*Boyle* decision in *Kottler* (Crotty, J.) for the proposition overruled by *Boyle*, that "The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages," *Cruz,* 2012 U.S. Dist. LEXIS 26417 at * 19.  *Cruz* also relies on *Eaves,* which does not cite *Boyle* at all.

The Estate provides a sketchy description of a hub-and-spokes structure, no doubt to permit a match with the Estate's equally sketchy description of the Radef Enterprise. A more complete description of the particular hub-and-spokes structure condemned in the decisions cited by the Estate shows that they consist of a single "hub" defendant that commits in the aggregate many predicate acts, with each act perpetrated as a one-time event, using an ever-changing cast of associates – the spokes – who act entirely independent of one another. *See Cedar Swamp Holdings,* 487 F. Supp. 2d at 450 ("… a 'hub-and-spokes' structure - that is, allegations that a common defendant perpetrated various *independent* frauds, each with the aid of a different co-defendant"); *First Nationwide Bank,* 820 F. Supp at 97-98 ("several borrowers *each* committed a similar but *independent* fraud with the aid of a particular lender, and …each such borrower acted on a particular occasion to benefit himself or herself *and not to assis*t any other borrower.") (emphasis added); *New York Auto. Ins. Plan v. All Purpose Agency & Brokerage*, 1998 U.S. Dist. LEXIS 15645 (S.D.N.Y. Oct. 2, 1998) (allegations that fraudulent insurance applications were submitted to the Plan through one insurance broker on behalf of numerous *unrelated* Insureds describes a classic "hub and spoke" conspiracy, not a RICO enterprise.). Descriptions of the hub-and-spokes structures that fail to satisfy the enterprise element emphasize the complete independence of the spokes: "no participant is alleged to have acted for the benefit of any other participant. They appear to have had no relationship to one another, and their actions and involvement in [the] schemes appear to have been isolated and independent." *Cedar Swamp Holdings*, 487 F. Supp. 2d at 451.[8]

---

[8] The imprecision of the Estate's argument is illustrated by the fact that certain "hub-and-spokes" arrangements can indeed serve as RICO enterprises. *See In re Ins. Brokerage Antitrust Litig*., 2007 U.S. Dist. LEXIS 73220 (D.N.J. Sept. 28, 2007), *aff'd in part, vacated in part*, 618 F.3d 300 (3d Cir. 2010). In these enterprises, the spokes are not entirely independent of one another, but are described as having a unifying "rim." "[T]o draw a structure cognizable as a RICO

The Estate's hub-and-spokes argument fails because the Estate has created the hub-and-spokes enterprise out of thin air – that is, without referencing the facts pleaded in the amended complaint. Thus, all the Estate describes is three supposedly independent schemes, in which Radef received pay for work he did not do; Radef paid Hampton, Cunningham, Coppola and Chambers for work they did not do; and Radef paid other workers for work on property he owns. *See Radef. Mem*. at 11. Having created this straw-man, the Estate likens it to those held faulty as hub-and-spokes enterprises. But the Estate's scenario has little to do with the facts pleaded in the amended complaint.

The present allegations begin an allegation that Fernandez hired Radef to work at Truman High School, *Am Compl*. ¶ 22, and that, during the same time that Radef was the School Custodian at Roosevelt High School, "Fernandez placed Radef on the Truman H[igh] S[chool] payroll, and paid him as a Truman HS Stationary Engineer …" *Am. Compl*. ¶24. During Radef's tenure as a supposed employee of Fernandez's at Truman, the amended complaint further alleges that "Fernandez, as the School Custodian at Truman HS, was responsible for the Truman School Custodian account and signed each Truman HS custodial employee's time cards and payroll checks, *[but] Radef actually managed the Truman HS custodial staff payroll and often distributed paychecks to the custodial employees. Am. Compl*. ¶ 23 (emphasis added). These allegations alone reveal that the Estate has incorrectly characterized Radef as a "hub," when in

---

enterprise, pleadings must assert facts drawing the 'rim' interconnecting enterprise associates." *Id*. at *118. Properly characterized, the cases cited by the Estate involve so-called "rimless" hub-and-spoke conspiracies. *See Dickson v. Microsoft Corp*., 309 F.3d 193, 203 (4th Cir. 2002) ("A rimless wheel conspiracy is one in which various defendants *enter into separate agreements with a common defendant*, *but where the defendants have no connection with one another, other than the common defendant's involvement in each transaction*.") (emphasis added). *See In re Ins. Brokerage Antitrust Litig*., 618 F.3d 300, 374 (3d Cir. 2010) (requiring a plausible "rim" or "wheel" connecting the alleged "spokes" for a RICO enterprise).

fact Fernandez and Radef operated as a team in carrying out aspects of the schemes. *Id*. With respect to the Truman HS no-show employees, paid from the Truman account, Fernandez, by his position as Truman School Custodian, provided the authority to "hire" the employees and sign checks, and Radef, himself hired by Fernandez, served as the "operations manager" of that aspect of the scheme. *Id*. At the outset, it cannot be said that "a common defendant [has] perpetrated various independent frauds, each with the aid of a different co-defendant." *Radef Mem*. at 10-11.

The Estate also neglects to consider that the No-Show scheme was in place at two separate sites – Truman High School and Roosevelt High School, and that some of the enterprise associates "worked" at both sites. Thus, Hampton operated as a no-show employee at Truman (where Fernandez as School Custodian signed time-cards and checks) and also operated as a no-show worker at Roosevelt (where Radef signed time-cards and checks). *Am. Compl*. ¶ 30, 32. Other Radef Enterprise associates had similar overlapping roles, serving as sham workers at both Truman and Roosevelt High Schools: Coppola was paid as if he were employed at Truman (where Fernandez signed checks) and also paid as if he worked at Roosevelt (where Radef signed checks). *Am. Compl*. ¶¶ 42, 44. Radef himself overlapped between the two schools, being paid as a sham employee at Truman, *Am. Compl*. ¶¶ 24-28, and paying sham employees at Roosevelt, *Am. Compl*. ¶¶ 37-41. Each of these features is indicative of interrelationships among the various players. However the Radef Enterprise may be characterized, it is not as an enterprise conducting "a series of independent frauds."

The amended complaint also alleges relationships and interactions among enterprise associates that do not comport with the Estate's argument for "various independent frauds, each with the aid of a different co-defendant." *Radef Mem*. at 10-11. In addition to the

already-described team effort of Fernandez and Radef at Truman high School (*Am. Compl.* ¶¶ 22, 23), defendant Cunningham acted as the Enterprise's courier, bringing the various sham employees at both Roosevelt and Truman their bogus time cards and checks to sign, *Am. Compl.* ¶ 33, after which Radef and/or Fernandez filed them with the appropriate school. At least some enterprise associates were aware of the involvement in the scheme of other enterprise associates, *Am. Compl.* ¶¶ 33, 41 (Hampton knew Chambers, Cunningham and Coppola were sham workers), permitting an inference of tacit agreements among them not to reveal the scheme. Cunningham, who couriered time cards and checks for signature among the associates, *Am. Compl.* ¶ 33, must have known of the workers' involvement in the No-Show Scheme and can be permissibly inferred to have kept it concealed. Coppola in fact used another sham worker (Hampton) to attempt to establish Cunningham's alibi as a sham worker, *Am. Compl.* ¶ 46, further negating any inference that "no participant is alleged to have acted for the benefit of any other participant" or that associates "appear to have had no relationship to one another, and their actions and involvement in [the] schemes appear to have been isolated and independent." *Cedar Swamp Holdings*, 487 F. Supp. 2d at 451. Moreover, the amended complaint expressly refers to long-term relationships among the enterprise associates, in that Radef recruited the sham workers to perform "work" at Truman and Roosevelt High Schools from then-current custodial workers at P.S. 158 (*Am. Compl.* ¶ 33, 37, 49, 54), where Radef had previously served as School Custodian. *Am. Compl.* ¶ 22. *Compare Elsevier Inc,* 692 F. Supp. 2d at 306 ("The *Boyle* Court made a point of noting that an association required proof of interpersonal relationships").

The amended complaint also describes interrelationships between the No-Show and the Diverted Work Schemes, contrary to the Estate's characterization of the two schemes as independent of one another: Hampton, who was a sham worker at Truman and at Roosevelt, *Am.*

*Compl.* ¶ 30, 32, also performed work at Radef's properties, paid for with DOE funds, *Am. Compl.* ¶¶ 55-56. Cunningham resided at one of Radef's properties, permitting an inference that Cunningham received a *quid pro quo* for his Enterprise-related services. *Am. Compl.* ¶ 33.

The interactions and relationships among the supposedly independent "spokes" – Cunningham's serving as the go-between among the Enterprise members and Radef, the associates' mutual knowledge and use of one another for alibis -- constitute a sufficient "rim" that distinguishes a proper enterprise from the improper, "rimless" hub-and-spokes arrangements in the cases cited by the Estate. *See, e.g. In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 375 (3d Cir. 2010) ("allegations of bid rigging provide the "rim" to the … enterprise's hub-and-spoke configuration, satisfying *Boyle's* requirements.").

In sum, there are far too many relationships alleged among the schemes and among the schemers – Fernandez hires Radef at Truman HS as a no-show; Radef pays some of the Truman no-shows, some of whom are the same no-shows that Radef pays at Roosevelt and also pays to work on Radef's properties; Cunningham resided in a Radef property and knit together the enterprise by gathering from associates the paperwork necessary to file the false claims and launder the funds obtained. The Estate cannot claim with any credibility "that a common defendant perpetrated various independent frauds, each with the aid of a different co-defendant," or that there are three "separate and independent" schemes.

**C.     The Radef Enterprise Possesses The Three Structural Criteria Required by *Boyle.***

Although the Estate's attack on the Radef Enterprise is restricted to the arguments advanced above, it is useful to set forth affirmatively the pleading requirements for an association-in-fact enterprise, to demonstrate that the amended complaint in fact meets all of those requirements.

"After some initial hesitation, most courts now agree that *virtually any combination* of persons and entities can constitute an association-in-fact as long as it satisfies the test set forth in *Boyle v. United States*." *RICO Tr*. at 1-63 (emphasis added).  *Boyle* held that "from the terms of RICO, it is apparent that an association-in-fact enterprise must have at least three structural features:  a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." 556 U.S. at 946.  *Accord Cruz v. FXDirectDealer, LLC*, 2012 U.S. Dist. LEXIS 26417, 18-19 (S.D.N.Y. Feb. 29, 2012) (an association-in-fact enterprise "'must have at least three structural features: a purpose, relationships among  those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose'" (quoting *Boyle*); *Neiman Marcus Group, Inc. v. Dispatch Transp. Corp*., 2011 U.S. Dist. LEXIS 30681, 22-23 (S.D.N.Y. Mar. 17, 2011) (Buchwald, J.) ("Where a plaintiff's claim turns on the existence of an 'association-in-fact' enterprise, the plaintiff must allege an enterprise with 'at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'") (quoting *Boyle*).[9] *See United States v. Larson*, 2011 U.S. Dist. LEXIS 139357, 19-20 (W.D.N.Y. Dec. 5, 2011) ("a group that does nothing but engage in extortion through old-fashioned, unsophisticated, and brutal means may fall squarely within the statute's reach.") (citing *Boyle*).

        The amended complaint alleges those the three required enterprise elements, describing a group of individuals who:  i) had the common goal of obtaining City/DOE money

---

[9] The Estate's citation to this Court's brief statement in *Neiman-Marcus* that "the enterprise must be separate from the racketeering activity," 2011 U.S. Dist. LEXIS 30681 at 23 (citing *Boyle*, 129 S. Ct. at 2245) does not support the Estate's argument that an enterprise must be distinct from its pattern of racketeering activity. The statement simply reflects a recognition that

for themselves without doing any work for it, *Am. Compl.* ¶¶ 23-61; ii) who were inter-related as employers, employees and co-workers, *Am Compl.* ¶ 3; and iii) who, over a period of at least six and perhaps nine years, *Am. Compl.* ¶¶ 22, 26-28, extracted money from the City and the DOE.

Although not even necessary as a structural element, some hierarchy is evidenced in the Radef Enterprise, as seen in the fact that two members of the enterprise – Radef and Fernandez – supplied the needed supervisory status, *i.e.*, by virtue of their positions, Radef and Fernandez possessed the authority to hire, sign time-cards and issue paychecks for other Enterprise associates, while the remaining associates (Coppola, Chambers, Cunningham and Hampton), through their status as genuine DOE custodial employees at other locations, could serve as plausible sham workers.  Cunningham played a third distinct role, dealing with intra-enterprise communications. *Am Compl.* ¶ 33.

The structure of the Radef Enterprise is little different than the enterprise described in *Boyle:* "[Boyle] and others participated in a series of bank thefts in New York, New Jersey, Ohio, and Wisconsin during the 1990's.  The participants in these crimes included a core group, along with others who were recruited from time to time." *Id*. at 942.  At the very least, Fernandez and Radef, assisted by Cunningham, operated as a "core group," recruiting others to participate in the No-Show or Diverted Work Schemes. Even assuming that the "core group" comprised three people – Radef, Fernandez and Cunningham – such a group (or even two people) qualifies as an enterprise, which can consist even of an unincorporated sole proprietorship, as long as it is not "a one-person show." *See City of New York v. Smokes-*

---

"enterprise" and "pattern of racketeering activity" are separate *elements*, as *Boyle* states. 556 U.S. at 947.

*Spirits.com, Inc.*, 541 F.3d 425 (2d Cir. 2008), *rev'd on other gnds*, *Hemi Group, LLC v. City of New York*, 130 S. Ct. 983 (2010).[10]

The amended complaint does not as a factual matter allege a hub-and-spokes enterprise of any type, and certainly not one possessing the "rimless" structure that fails to satisfy the requirements of a RICO enterprise.   The argument for dismissal on this basis should be rejected.

---

[10] *See also United States v. Benny*, 786 F.2d 1410 (9th Cir. 1986); *McCullough v. Suter*, 757 F.2d 142, 143 (7th Cir.1985) ("if [an individual or sole proprietorship] has employees or associates, the enterprise is distinct from him, and it then makes no difference, so far as we can see, what legal form the enterprise takes. The only important thing is that it be either formally (as when there is incorporation) or practically (as when there are other people besides the proprietor working in the organization) separable from the individual."); *see, e.g. United States v. Brown*, 2001 U.S. Dist. LEXIS 2777 (E.D. La. 2001) ("The Government contends that Louisiana Consultants was an association between Cecil Brown and Edwin Edwards, and that the company employed a secretary.  Because the Government claims that there were people other than Brown working for the enterprise and that Brown either cooperated with or took orders from Edwards, the Court finds that Louisiana Consultants and Brown are distinct."), *aff'd on other gnds.*, 298 F.3d 392 (5th Cir. 2002).

## <u>CONCLUSION</u>

For all of the reasons set forth above, the City respectfully requests that the Court deny in its entirety the motion of Betty Radef, as executor of the estate of Trifon Radef, deceased, to dismiss the amended complaint.

Dated:          New York, New York
                August 20, 2012

                              MICHAEL A. CARDOZO
                              Corporation Counsel of the
                                City of New York
                              Attorney for Plaintiffs
                              100 Church Street, Room 20-99
                              New York, New York 10007
                              (212) 788-1324

                              By:     _____s/_____
                                      Eric Proshansky (EP 1777)
                                      June Buch (JB 1494)
                                      Assistant Corporation Counsel